1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>INTERNAL REVENUE SERVICE,<br><br>Defendant. | Case No. C15-369 RSM<br><br>Case No. C15-850 RSM<br><br>ORDER GRANTING MOTION FOR<br>SUMMARY JUDGMENT |

## I.     INTRODUCTION

This Freedom of Information Act ("FOIA") matter comes before the Court on Defendant Internal Revenue Service ("IRS")'s Motion for Summary Judgment. Dkt. #63. Plaintiff Microsoft Corporation has filed an opposition. Dkt. #68. The Motion was fully briefed on September 6, 2022. Neither party has requested oral argument. For the following reasons, the Court GRANTS Defendant's Motion and dismisses this case.

## II.     BACKGROUND

Microsoft filed this case in 2015. Dkt. #1. The six FOIA requests at issue here were made in 2014 and 2015. They concern an IRS audit that began in 2007 for the tax years of 2004 through 2006. The Court has already expressed its critical remarks regarding the length of time this litigation has lingered in a related case and won't repeat them here.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 1

The IRS's audit of Microsoft at issue here is "one of the largest in the Service's history." Dkt. #63 at 2. Perhaps because of that, the IRS created special regulations to hire attorneys from outside law firms (Boies Schiller and Quinn Emanuel, or "QE") as contractors. *Id*.

Microsoft's six FOIA requests in this case were for records relating to these outside contractors. Dkt. #1 (Complaint) Exs. A, C, F & H; Case No. 2:15-cv-850-RSM Dkt. #1 (Complaint) Exs. A & D. The requests sought records relating to the IRS's contracts with Boies Schiller (requests one and six) and Quinn Emanuel (request five); the temporary and proposed regulations on involving contractors in certain aspects of summons enforcement (requests two and three); and the designated summons issued to Microsoft (request four).

**A. Search for the First FOIA Request**

The first FOIA request was originally assigned to Information Specialist Corrina Smith. Dkt. #63-7 ("Valvardi 2d Decl."), ¶ 5. Later, Chief Counsel attorney Daniel Lavassar from the office of the Large Business and International Division Counsel ("LB&I"), along with other LB&I attorneys assisting in Plaintiff's audit, began to search for records responsive to this request. *Id*. at ¶ 7 and ¶ 16. Mr. Lavassar contacted IRS Procedure and Administration ("P&A") Branch 8 to search for electronically stored records. *Id*. at ¶ 28.

He also advised Ms. Smith to send the request to Cheryl Richardson, a contracting officer in the Procurement office which had worked on the Boies contract. Valvardi 2d Decl. at ¶ 7. Ms. Richardson stated that no work was performed under the contract with Boies, that the contract was cancelled, and that she did not have any responsive documents.

In early March 2015, the first request was reassigned to Senior Disclosure Specialist Jean Pelzl. *Id*. at ¶ 11. Ms. Pelzl discussed the first request with Plaintiff's counsel, who

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 2

1   provided several names of other IRS and Counsel employees who might have responsive

2   records, all of whom she asked to search for records.  *Id*. at ¶¶ 11–12.  Two weeks after

3   Plaintiff filed suit in March 2015, Ms. Pelzl forwarded the documents collected to the Office of

4   Chief Counsel.  *Id.*

5        **B.  Search for the Second FOIA Request**

6        The IRS Disclosure office sent the second FOIA request to LB&I attorneys assisting in

7   Plaintiff's audit, who began to search for records and contacted P&A Branch 8 to search for

8   electronically stored records.  *Id*. at ¶ 16.  The Disclosure office also contacted P&A Senior

9   Counsel A.M. Gulas was the lead attorney tasked with drafting the temporary regulations at

10  issue in the request.  *Id*. at ¶ 17.  In early March 2015, Ms. Gulas provided Ms. Smith with a

11  copy of the official agency file created and maintained by Ms. Gulas during the drafting of the

12  Temporary Regulations, which she determined were all records responsive to this second

13  request.  *Id*. at ¶¶ 15, 20–21.

14       **C.  Search for the Third FOIA Request**

15       This request, seeking in part communications between the IRS and outside experts, was

16  also assigned to Ms. Smith, who determined that the records were maintained by various IRS

17  and Chief Counsel offices.  *Id*. at ¶ 23. The Disclosure office and LB&I attorneys searched for

18  records and contacted P&A Branch 8 to search for electronically stored records.  *Id.* at ¶ 24 and

19  ¶ 28.  Ms. Smith coordinated with LB&I attorney Mr. Lavassar, and Eli Hoory, then Senior

20  International Advisor in LB&I's Washington, DC office.  *Id.* at ¶ 27.  They did not find any

21  records responsive to the first category of records.  *Id*. at ¶¶ 28–29.

22       The Disclosure office also contacted Ms. Gulas, the lead attorney tasked with drafting

23  the temporary regulations.  *Id.* at ¶¶ 17, 25–26.  The official agency file for the Temporary

Regulations was provided to Ms. Smith, and she determined that the file was responsive to the second and third categories of records sought by Plaintiff's third FOIA request. *Id.*

After this litigation commenced, Chief Counsel attorney James Hartford, then Special Counsel in P&A, instructed the attorney assigned to help defend the FOIA litigation, Scott Hovey, to email specific custodians to say they needed to search for and provide copies of any paper documents for review. Dkt. #63-1 ("Hartford Decl."), ¶ 22.  Mr. Hovey instructed the custodians to let him know if they did not have any paper files and that their electronically stored information ("ESI") would be collected through the Service's electronic discovery request ("EDR") process. *Id.*

### D.  Search for the Fourth FOIA Request

This request was assigned to Senior Disclosure Specialist Jean Pelzl.  Valvardi 2d Decl. at ¶¶ 31–32.  Ms. Pelzl forwarded a copy of the request to LB&I attorney Shawn Barrett and emailed Revenue Agent ("RA") Douglas Odell, the international examiner in LB&I who issued several of the summons in Plaintiff's audit.  Mr. Odell suggested that IRS employee Woo Jung Choi and Chief Counsel attorneys Roy Wulf and Cathy Goodson might also know the whereabouts of responsive records.  P&A Branch 8 searched for electronic records.  After contacting Mr. Hoory to discuss whether employees outside LB&I might have responsive records, LB&I attorney Lavassar determined that all responsive records would be found within LB&I.  *Id.* at ¶ 35.  In February 2015, Mr. Odell informed Ms. Pelzl that the search for potentially responsive records was being coordinated by Chief Counsel attorney Cathy Goodson.  *Id.* at ¶ 37.

### E.  Search for the Fifth and Sixth FOIA Request

These requests were assigned to Senior Disclosure Specialist Jean Pelzl.  *Id*. at ¶ 40. She emailed all the custodians listed in the requests, except for two employees, Michael Danilack and Robert Ratchford, who had both retired.  *Id*. at ¶ 42.  The emails included copies of the fifth and sixth request and asked the recipients to begin searching for responsive hard copy and electronic records.  *Id*.

In April 2015, Senior Level Special Trial Attorney Cathy Goodson, who was then an Associate Area Counsel in Chief Counsel LB&I, emailed the employees named in, or otherwise likely to have records responsive to, these FOIA requests. *Id*. at ¶ 43.  Ms. Goodson asked if they maintained any potentially responsive hard copy records. She also said they should provide information about where and how their potentially responsive ESI was maintained because this information would be needed for IRS IT to collect their ESI through the EDR process.  *Id*.  Ms. Goodson also advised the custodians that a self-search for potentially responsive electronic records was unnecessary, as all of their ESI would be collected by IRS IT and moved to a database where it could be searched using specific parameters. *Id.* at ¶ 44. Some custodians found potentially responsive hard-copy documents, which were scanned and added to the database containing ESI collect by IRS IT to be reviewed.  *Id*. ¶ 47.

Some responsive documents were found in the Chief Counsel's Concordance document review and processing system. *Id.* at ¶ 50.

After the filing of this suit, Mr. Hartford asked John Gordon, a partner at Quinn Emanuel, requesting that he provide all of the material that the agency had provided to QE under and in connection with the contract. Hartford Decl. at ¶ 51.  Mr. Hartford also emailed Carroll O'Connor, a QE paralegal working on the contract, directing her to send him the CDs and thumb drives that the Service had provided to her firm so that the Service could copy that

data to be searched in connection with this litigation. *Id*. at ¶ 52.  In October 2015, Mr. Harford received the CDs and thumb drives and the data was copied by P&A in November 2015.  *Id*. ¶¶ 54–55.

### F.  Search for ESI Responsive to all Six Requests

The IRS details in its Motion the general process by which IRS IT and others conducted its search and review of ESI.  Dkt. #63 at 9–12.  This does not appear to be at issue in this Motion.

The laptop computers of custodians who had left the IRS before the collection of their information had to be located for the ESI from their hard drives to be copied. Valvardi 2d Decl. at ¶ 64.  However, IRS IT discovered that the ESI on the laptop computers of some separated custodians had been erased before the EDR, under IRS equipment retention practice at the time, so that the computer could be re-used by another employee without disclosing sensitive information stored on the laptop by the prior user. *Id*.  The hard drives of laptop computers that could be located, and whose ESI still had not been erased, were copied just like the other ESI storage locations.  *Id*. at ¶ 65. For the separated custodians whose laptops had been erased, ESI from their laptop hard drives was copied from preserved ESI collected under previous EDRs. *Id*. at ¶ 66.  ESI of those separated custodians was also copied from the Microsoft Exchange enterprise email server and from each custodian's assigned network file storage location.  *Id*.

For every custodian, including those who had separated from the Service or Chief Counsel, ESI was collected from their Microsoft Exchange email accounts and from the network data file servers used by each custodian. *Id*. at ¶ 67. Some amount of email ESI, ranging from 65 megabytes to 31.7 gigabytes, was collected for every custodian, including those whose laptop hard drives had been erased.  *Id*. ¶¶ 67–68.

The IRS states that it decided not to search "disaster recovery backup magnetic media" for records responsive to FOIA requests due to the cost involved and the low chance of finding new information.  Dkt. #63 at 11.

The IRS details cost-savings approaches to applying different search terms to different custodians it believed were most likely to have relevant documents to the three distinct subject matters in these FOIAs—the regulations and communications about them; the designated summons; and the contracting with Boies and Quinn Emanuel.  *Id*. at 11–12.

### G.  Sam Maruca's Hard Drive

The IRS spends a couple pages detailing the unusual circumstances of recovering the hard drive for Samuel Maruca, former director of the Service's Transfer Pricing Office, who left the IRS on August 1, 2014.  *Id*. at 12–13.  His hard drive should have been erased when he retired.  The IRS so informed the Court.  Later, the IRS found his hard drive.  The IRS also searched the magnetic backup tapes, which was apparently an "extremely time-consuming, burdensome, and labor-intensive process."  *Id*. at 13.

### H.  This Action

Ultimately, the IRS released more than 337,000 pages in full. It withheld about 7,200 pages in part and 38,200 pages in full.  Dkt. #63-5 ("Valvardi Decl."), ¶ 5.  Over the last seven years, the parties have apparently engaged in good faith back and forth efforts to review and release these documents, as evidenced by countless joint status reports and unopposed motions to extend deadlines.  *See* Docket.  The IRS now moves for summary judgment dismissal.

### III.    DISCUSSION

### A.  Legal Standard

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 7

In FOIA cases, the usual summary judgment standards apply and "if there are genuine issues of material fact in a FOIA case, the district court should proceed to a bench trial or adversary hearing" and issue findings of fact and conclusions of law. *Animal Legal Def. Fund*, 836 F.3d at 990 (citing Fed. R. Civ. P. 52(a)(1)); *see also Cameranesi v. United States DOD*, 856 F.3d 626, 636 (9th Cir. 2017) ("We have now overruled this FOIA-specific summary judgment standard, and instead apply our usual summary judgment standard.").

Accordingly, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

FOIA establishes "a judicially enforceable right to secure [government] information from possibly unwilling official hands." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.

Ct. 1592, 48 L. Ed. 2d 11 (1976) (citing S. Rep. No. 813, 89th Cong. (1st Sess. 1965)); *see also*

*Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009).  The aim of these disclosure requirements is

to "ensure an informed citizenry, vital to the functioning of democratic society, needed to check

against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins*

*Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S. Ct. 2311, 57 L. Ed. 2d 159 (1978); *see also*

*Hamdan v. United States DOJ*, 797 F.3d 759, 770 (9th Cir. 2015); *Shannahan v. I.R.S.*, 672

F.3d 1142, 1148 (9th Cir. 2012).

Federal agencies have a duty to construe FOIA requests liberally.  *Yagman v. Pompeo*,

868 F.3d 1075, 1080 (9th Cir. 2017).  Upon receipt of a FOIA request, a federal agency "shall

make the records promptly available," 5 U.S.C. § 552(a)(3)(A), and "shall make reasonable

efforts to search for the records" responsive to a request.  *Id.* § 552(a)(3)(C)–(D).  The agency

must establish that it conducted a search "reasonably calculated to uncover all relevant

documents."  *Silbaugh v. Pizzella*, No. C18- 1182-JCC, 2019 WL 4392502, at *3 (W.D. Wash.

Sept. 13, 2019) (citing *Zemansky v. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985)).  Agencies must

respond to FOIA requests within twenty business days of receipt, *id.* § 552(a)(6)(A)(i), and

disclose responsive documents unless one or more of FOIA's exemptions apply.  These

exemptions are "narrowly construed."  *Shannahan*, 672 F.3d at 1149.  An agency bears the

burden of establishing that an exemption applies.  *Lahr*, 569 F.3d at 973.  "Any reasonably

segregable portion of a record shall be provided" to the FOIA requester.  5 U.S.C. § 552(b).

**B.  Analysis**

**1.  Adequacy of the Search**

FOIA requires the responding agency to demonstrate that it has conducted a search

reasonably calculated to uncover all relevant documents.  This showing may be made by

"reasonably detailed, nonconclusory affidavits submitted in good faith." *Lahr*, 569 F.3d at 986 (9th Cir. 2009) (quoting *Zemansky,* 767 F.2d at 571 (9th Cir. 1985)).  Affidavits submitted by an agency to demonstrate the adequacy of its response are presumed to be in good faith.  *Grand Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771, 224 U.S. App. D.C. 1 (D.C.C. 1981).  However, FOIA places the burden "expressly . . . 'on the agency to sustain its action.'"  *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 755 (1989).  In evaluating the adequacy of the search, the issue "is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  *Lahr*, 569 F.3d at 987.  "[T]he failure to produce or identify a few isolated documents cannot by itself prove the searches inadequate."  *Id*. at 988.

*Lahr* makes clear that a search is not inadequate for failure to turn up a single document, *see id*. at 987 (citing *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315, 354 U.S. App. D.C. 230 (D.C. Cir. 2003)).  However, "it may be the case that 'if a review of the record raises substantial doubt, particularly in view of well-defined requests and positive indications of overlooked materials, summary judgment is inappropriate."  *Hamdan v. United States DOJ*, 797 F.3d 759, 771, 2015 (quoting *Iturralde*, 315 F.3d at 314).

The IRS maintains that its search efforts were reasonable and adequate under law.  Dkt. #63 at 14–18.  The IRS argues that the reasonableness of the search "is judged by the process, and not the fruits of the search," citing *Zaldivar v. United States Dep't of Veterans Affairs*, No. CV1401493PHXDGCDMF, 2016 WL 4429657, at \*3 (D. Ariz. Aug. 22, 2016), *aff'd*, 695 F. App'x 319 (9th Cir. 2017).  *Id*. at 14.  Anticipating Microsoft's arguments, the IRS cites *SafeCard Servs., Inc. v S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) for the proposition that a requester cannot challenge the adequacy of a search by "purely speculative claims about the

existence and discoverability of other documents." *Id.* at 14–15.  The IRS relies on its attached declarations and contends that "once the agency submits declarations in support of its search, the burden shifts to the requester to introduce evidence of bad faith to rebut the presumption." *Id.* at 15 (citing *SafeCard*, 926 F.2d at 1200).

The IRS points out that it searched for only its own "agency records," *i.e.* searching only for "records in the agency's possession at the time of the requests or materials originating from the agency." *Id.* at 17.  Put another way, the IRS is asserting that it was not required to search for records outside its possession that were originated by the contractors at Boies Schiller or Quinn Emanuel.

Microsoft argues that "Defendant, QE, and Boies, however, contractually expanded the scope of Defendant's agency records, defining Defendant's property as including all records provided by Defendant to QE and Boies, and all records QE and Boies created or assembled as part of their respective engagements."  Dkt. #68 at 6 (citing Rosen Decl., Ex. 10 (QE Contract at 10-11), Ex. 9 (Boies Contract at 9)).  Microsoft contends that the IRS "constructively" obtained and controlled certain unproduced records created by QE and Boies.  *Id.* at 8 (citing *Burka v. United States HHS*. 87 F.3d 508, 515 (D.C. Cir. 1996)).

The remainder of Microsoft's Response on this issue leans heavily on vague, conclusory accusations of an inadequate search without supporting detail.  Microsoft states that the IRS "applied inconsistent search conventions" and implemented "disparate search standards for similarly situated custodians without reasonable explanation."  Dkt. #68 at 6.  Microsoft points to any and all irregularities in this search process, including the issues with Sam Maruca's hard drive and that the IRS failed to review any ESI from Gary Gray, an Office of Chief Counsel executive. *Id.* at 14–16.

On Reply, the IRS points out that "this Court has never adopted the *Burka* test" and it argues that it "should decline to do so here because *Burka* conflicts with the possession prerequisite for an agency record set forth in the Supreme Court (*Tax Analysts, Forsham*) and Ninth Circuit (*Rojas*) precedent cited above." Dkt. #78 at 4.  The IRS adequately explains that Gary Gray's records were searched and argues that its efforts related to Sam Maruca's hard drives were "reasonably calculated to uncover all responsive records." *Id*. at 7–8.

The Court has thoroughly reviewed the steps taken by the IRS to conduct the FOIA searches at issue here.  The Court agrees with the IRS that they were reasonable and adequate under the circumstances of this case and the above controlling law.  Microsoft has failed to introduce evidence of bad faith or to otherwise demonstrate that the IRS's actions were unreasonable.  The search efforts, as described above, meet the standard of being "reasonably calculated to uncover all relevant records" and were made in good faith.  The Court has no reason to conclude otherwise.  Any irregularities are adequately explained, and might be expected given the size and scope of the requests.

The IRS was not required to search records outside its possession or those originating from Boies Schiller or Quinn Emanuel under controlling case law.  Those records are not "agency records" for purposes of the FOIA.  An agency's contractual "right of access" to materials held by a private party is not dispositive as to whether such materials are "agency records." *See Forsham v. Harris*, 445 U.S. 169, 171, 177-78 (1980). The FOIA excludes "government contractor" from the definition of "agency." *See* 5 U.S.C. § 552(f)(1); *see also Forsham v. Harris*, 445 U.S. at 179 ("Congress excluded private grantees from FOIA disclosure obligations by excluding them from the definition of 'agency.'"). For contractor-created materials to be transformed into "agency records," they must have been received by the

1  agency.  *Id*. at 183-86; *Rojas v. Fed. Aviation Admin.*, 989 F.3d 666, 677 (9th Cir. 2021) (en

2  banc) ("Documents that are not in an agency's possession do not constitute 'agency records'

3  even if the agency could have obtained them by asking a third party to produce them"), *cert.*

4  *denied*, 142 S. Ct. 753, 211 (2022); *see also Am. Small Bus. League v. U.S. Small Bus. Admin*,

5  623 F.3d 1052, 1053 (9th Cir. 2010).  The Court declines to apply the test from *Burka, supra* to

6  find that the IRS constructively controlled these records.

7          This is not a basis to deny summary judgment.

8          **2.  Adequacy of the *Vaughn* Index**

9          Anticipating this issue, the instant Motion argues, in a footnote:

10                 "The adequacy of a *Vaughn* Index is not defined by its form, but
                   rather its substance." *People for the Am. Way Found. v. Nat'l Park*
11                 *Serv.*, 503 F. Supp. 2d 284, 294–95 (D.D.C. 2007) (citation
                   omitted). A *Vaughn* Index is not expected to be "a work of
12                 literature," and "agencies are not graded on the richness or
                   evocativeness of their vocabularies," *Landmark Legal Found. v.*
13                 *IRS*, 267 F.3d 1132, 1138 (D.C. Cir. 2001), nor on the length of
                   their document descriptions, *Judicial Watch, Inc. v. FDA*, 449 F.3d
14                 141, 146 (D.C. Cir. 2006). The relevant inquiry in analyzing the
                   adequacy of a *Vaughn* Index is "whether the index provide[s] a
15                 relatively detailed justification, specifically identif [ies] the reasons
                   why a particular exemption is relevant and correlat[es] those
16                 claims with the particular part of a withheld document to which
                   they apply." *People for the Am. Way Found.*, 503 F. Supp. 2d at
17                 295 (internal quotation marks and quotation omitted).

18  Dkt. #63 at 19 n.2.

19          Microsoft argues that the *Vaughn* index is inadequate, "repeatedly reciting as the bases

20  for exemptions claimed the same generalized, substance-free entries, failing to include requisite

21  data for each document withheld, and improperly identifying document families."  Dkt. #68 at

22  16.  The specific data that is withheld for some documents includes the "date, author,

23  recipient(s) and subject."  *Id*. at 17.  Microsoft criticizes the IRS for relying on the documents

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 13

themselves to provide justification for redacted data, which it calls a "two-source convention." *Id*. at 18.  Microsoft states that the IRS has separated attachments from emails and thus destroyed "document family data." *Id*.

The IRS replies that "categorization and repetition provide efficient vehicles by which a court can review withholdings that implicate the same exemption for similar reasons," "[e]specially where the agency has disclosed and withheld a large number of documents," citing *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006) ("No rule of law precludes [an agency] from treating common documents commonly.").  Dkt. #78 at 10.  The IRS also cites to *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1138 (D.C. Cir. 2001) for the proposition that "[i]t is not the agency's fault that thousands of documents belonged in the same category, thus leading to exhaustive repetition." *Id*.  The IRS asserts that when not otherwise apparent on the face of a document, the *Vaughn* index includes date, author, recipient, and subject, and argues that Microsoft fails to identify a specific list of offending entries. *Id*. at 11.  The IRS calls the alleged destruction of document family data "cursory and context-free." *Id*.  The IRS asserts that it is entitled to treat emails and attachments as separate records, and explains its process for when it concluded that an attachment was not responsive to the FOIA requests. *Id*. at 11–12.

Considering the *Vaughn* index and the declarations filed in this case together, the Court finds that the information provided in that index was not inadequate for the general reasons argued by Microsoft.  The use of repetitive entries does not reflect a lack of substantive information but rather the large number of documents at issue and, perhaps, the repetitive nature of work at the IRS.  While the IRS's *Vaughn* index might be monotonous, or even less-than-helpful from the perspective of Microsoft, courts have found that repetitive entries are

1    efficient for the Court and certainly the producing agency.  Microsoft's "cursory and context-
2    free" criticism of the *Vaughn* index is adequately rebuffed by the IRS's explanation of its
3    procedure, perhaps more complicated than it needed to be, for reporting date, author, recipient,
4    and subject information and document family data.  Cutting out nonresponsive records appears
5    to be an appropriate use of agency discretion.  Microsoft's frustrations with the *Vaughn* index
6    do not preclude summary judgment dismissal of this case.

7    **3.  Exemptions**

8        The IRS has withheld or redacted documents based on FOIA exemptions 552(b)(2),
9    (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E) (Exemptions 2, 3, 4, 5, 6, 7A,
10   7C, and 7E). Microsoft does not challenge the IRS's use of exemptions 7(C) and 7(E).  Dkt.
11   #68 at 29 n.25.  The remaining exemptions are addressed individually below.

12   **i.    Exemption 2**

13       Exemption 2 protects from disclosure matters "related solely to the internal personnel
14   rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 thus "applies to internal
15   rules and practices exclusively connected with 'the selection, placement, and training of
16   employees,' including 'hiring and firing.'" *Rojas v. Fed. Aviation Admin.*, 941 F.3d 392, 402
17   (9th Cir. 2019 (citing *Milner v. Dep't of Navy*, 562 U.S. 562, 569–70 (2011)).

18       The IRS points to the declaration of Christopher Valvardi to support the use of this
19   exemption for withholding "information relates solely to agency personnel matters, such as the
20   placement of employees for certain assignments."  Dkt. #63 at 19–20 (citing Valvardi Decl. ¶
21   11).

22       Microsoft disagrees with the use of this exemption for four documents, but cites in
23   briefing to no examples, stating only "certain withheld documents address decisions regarding

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 15

Plaintiff's audit and the assignment of Defendant's personnel to the examination." Dkt. #68 at 31. Microsoft compares these to a document where the exemption 2 claim was rejected *in Schwaner v. Dep't of the Air Force*, 898 F.2d 793 (D.C. Cir. 1990), a "roster including the names and military duty addresses of Air Force personnel." *Id*.

Microsoft provides no evidence or argument to support the assertion that these documents relate to *decisions* regarding Plaintiff's audit. They are not comparable to a roster including names and addresses. These documents appear to be exclusively "connected with" the placement of employees and with personnel practices. The IRS has met its burden of establishing that this exemption applies.

### ii.    Exemption 3

FOIA exemption 3 permits an agency to withhold information that is specifically exempted from disclosure by statute. 5 U.S.C. § 552(b)(3). At issue in this Motion are documents withheld under Sections 6103 of Title 26.

Section 6103(a) provides that tax "returns" and "return information" are to be kept confidential, unless disclosure is permitted by Title 26. *Church of Scientology of California v. IRS*, 484 U.S. 9 (1987). "Return information" is defined and construed broadly, and includes practically any data "received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence of, or possible existence of liability (or the amount thereof) of any person[.]" 26 U.S.C. § 6103(b)(2)(A). Third parties may not obtain such "return information" of another person without that person's written authorization. *See* 26 U.S.C. § 6103(c), 26 C.F.R. § 601.702(c)(4)(i)(E) & (c)(5)(iii).

Section 6103(e)(7) provides that "[r]eturn information with respect to any taxpayer may be open to inspection or by disclosure . . . if the Secretary [of the Treasury] determines that such disclosure would not seriously impair Federal tax administration."

The IRS claims exemption 3 protection for 2,512 records. The records withheld under § 6103(a) contain "the tax information of third parties, including: names, taxpayer identification numbers, or other identifying information; the fact of whether a particular taxpayer's return is being examined; and descriptions of examination or collection activity." Dkt. #63 at 21 (citing Valvardi Decl. ¶ 15). The records withheld under § 6103(e)(7) contain "communications and activities involved in the Service's examination of Plaintiff, or, communications and activities related to its examinations or other enforcement activities pertaining to other taxpayers." *Id*. at 22 (citing Dkt. #63-9 ("Choi Decl."), ¶¶ 10-13; Dkt. #63-3 ("Hartford 2d Decl."), ¶¶ 7-11). The Second Declaration or James Hartford states that releasing these records to Microsoft now could provide it "with much earlier and greater access to information about the Service's examination than plaintiff would otherwise be entitled to receive in administrative or litigation proceedings, whereas the Government is not entitled to a corresponding degree of discovery in these proceedings' current posture." Hartford 2d Decl. at ¶ 11.

Microsoft criticizes the *Vaughn* index for only providing general descriptions of these documents but fails to talk about any specifics. Microsoft say the IRS's declarations "simply parrot the 26 U.S.C. § 6103(e)(7) standard" without proving that the disclosure of the information would prematurely aid Microsoft's legal strategy in subsequent administrative or litigation proceedings. Dkt. #68 at 28.

Given the limited argument above, the Court will not deny summary judgment based on this exemption or order the production of any documents. The IRS's cited declarations provide

adequate detail justifying the IRS's withholdings under § 6103(e)(7) and the IRS's *Vaughn* index details the tax return information records withheld under these exemptions. Given the length and nature of these proceedings, it is clear to the Court without further argument from the IRS that Microsoft would very likely benefit from the withheld information in future administrative or litigation proceedings. The IRS has met its burden of establishing that this exemption applies.

### iii.    Exemption 4

Exemption 4 protects "trade secrets and commercial or financial information obtained from a person" that is "privileged or confidential." 5 U.S.C. § 552(b)(4). The redacted information here includes information provided by various contractors before, during, or after the contract such as contractors' proposed, prospective, or actual billing schedules, as well as information on invoice documents reflecting amounts billed, hours worked, and bank account numbers. Valvardi Decl. at ¶¶ 18–19.

Microsoft takes issue with 34 documents withheld under this exemption. The Court finds that the withheld information is "commercial or financial information" under the ordinary meaning of that phrase. *See Pub. Citizen Health Res. Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) ("Records that actually reveal basic commercial operations, . . . or relate to the income-producing aspects of a business," fall within the scope of "commercial" information). This is the type of information that would typically be confidential. *See Rocky Mountain Wild, Inc. v. United States Forest Serv.*, No. 18-CV-03065-MEH, 2021 WL 825985, at *19 (D. Colo. Mar. 4, 2021) (regarding "corporate bank account numbers, estimated insurance premiums, and information provided in connection with billing statements from Plaintiff's counsel"); *Calderon*

1    *v. U.S. Dep't of Agriculture*, 236 F. Supp. 3d 96, 119 (D.D.C. 2017). The IRS has met its

2    burden.

3                        iv.    **Exemption 5**

4            FOIA exemption 5 protects from disclosure "inter-agency or intra-agency

5    memorandums or letters which would not be available by law to a party other than an agency in

6    litigation with the agency." 5 U.S.C. § 552(b)(5). As the language suggests, exemption 5

7    incorporates those privileges which the government enjoys in pretrial discovery under relevant

8    statutes and case law. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1984).

9    This exemption incorporates the governmental deliberative process privilege, the attorney-

10   client privilege and the work-product doctrine. *See Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C.

11   Cir. 2002).

12           The Vaughn index cites exemption 5 as the basis for withholding approximately 6,242

13   documents or parts thereof.

14   **Deliberative process privilege**

15           Defendant bears the burden of establishing the deliberative process involved and the

16   role played by the documents at issue in that process. *See Senate of Puerto Rico v. DOJ*, 823

17   F.2d 574, 585 (D.C. Cir. 1987). Documents qualify as predecisional and deliberative only if

18   they "reflect[] advisory opinions, recommendations, and deliberations comprising part of a

19   process by which governmental decisions and policies are formulated." *Tax'n With

20   Representation Fund v. IRS*, 646 F.2d 666, 677 (D.C. Cir. 1981).  Microsoft cites to *Safeway,

21   Inc. v. IRS*, No. C 05-3182 SBA, 2006 U.S. Dist. LEXIS 81078, at *26 (N.D. Cal. Oct. 24,

22   2006) as a case on point.  In *Safeway*, the court found that "the IRS'[s] decisionmaking about

23   the extent of [p]laintiff's tax liability is not the sort of deliberative process meant to be

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

addressed by the privilege." 2006 U.S. Dist. LEXIS 81078, at *26. The court found that characterizing documents as "predecisional simply because they play into an ongoing audit process would be a serious warping of the meaning of the word." *Id.*, at *26 (quoting *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)).

The IRS distinguishes *Safeway* by arguing that court "assumed that the documents at issue lacked the subjective, personal thoughts of IRS employees in the absence of a sufficient description of the documents' contents, which is not the situation here." Dkt. #78 at 14 n.16. The IRS counters by citing to some cases of its own where the deliberative process privilege was upheld for workpapers and other audit documents. *Id.* (citing *Highland Cap. Mgmt., LP v. Internal Revenue Serv.*, 408 F. Supp. 3d 789, 815 (N.D. Tex. 2019) (finding documents to be clearly "pre-decisional, since they were generated prior to the IRS's final decision to adjust Plaintiff's tax liability") and *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1280 (11th Cir. 2004)).

Further, the IRS points to the Valvardi declaration as containing "much of the information that Plaintiff complains is lacking, including the function and role of the documents, many of which are drafts…" *Id.* at 15 (citing Valvardi Decl. at ¶¶28–43).

The Court's decision here does not seem to be bound to controlling law. Each party cites to district court cases coming to different conclusions. The Court finds that, given the scope and unusual nature of this case, the documents at issue are not related to a run-of-the-mill assessment of a company's tax liability, but closer to a process by which governmental decisions and policies are formulated. The explanation for the use of this privilege is sufficient and seems better than what was available to the court in *Safeway.* Microsoft's other criticisms

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

about vagueness in *Vaughn* index entries have been dealt with above.  The IRS has met its burden.

**Attorney client privilege**

The attorney-client privilege, as incorporated into exemption 5, protects from disclosure "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Central, Inc. v. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).

Based on the information in the Valvardi declaration and the *Vaughn* index, the IRS argues that the documents withheld under this privilege were communications "(1) among government attorneys reflecting the facts provided by the Service in order to obtain advice, or reflect the advice being developed by government attorneys to benefit the agency; (2) among Chief Counsel attorneys relating to legal advice requested on behalf of the Service; and (3) among Service employees and examiners and Chief Counsel for legal advice on Plaintiff's examination.  Dkt. #63 at 27–36 (citing Valvardi Decl. at ¶¶ 21–26).

The IRS claims attorney-client privilege for 4,821 records or parts thereof.  Microsoft's first states that "in many cases" this privilege is invoked for documents "with purely factual information…. including audit workpapers."  Dkt. #68 at 20–21.  Again, Microsoft does not provide any specifics or further detail.  Microsoft then argues that this privilege cannot apply to documents created by QE and Boies contractors because the record shows that these attorneys "provided audit support, not legal counsel."  *Id*. at 21 (citing several sources in the record).  Finally, Microsoft maintains that "[t]he attorney-client privilege also does not apply to communications regarding the proposed and temporary regulations."  *Id*. (citing *Coastal States*

*Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862-63 (D.C. Cir. 1980)).  Microsoft points to no

specific documents.

On Reply, the IRS states:

> Contrary to Plaintiff's unfounded contentions based on its warped
> reading of the agency's representations in the prior summons
> enforcement action, the IRS's evidence, testimony, and briefing
> has been consistent: QE was to provide the services of an expert in
> commercial litigation and assist the IRS in "preparing, organizing
> and presenting the factual record and *legal analysis* of the case."
> (Dkt. No. 15-cv-00102-PSM [sic] doc. 36-4 (Contract) at 7, 10
> (emphasis added).) Eli Hoory further testified that QE was hired to
> provide the "kind of legal consultation and advice . . . that a
> complex commercial litigator would have." (Rosen Decl. Ex. 7
> (Tr.) at 52–53); *see also* Dkt. No. 15-cv-00102-PSM [sic] doc. 92
> at pdf [sic] 15–16 ("The goal was to obtain an independent
> evaluation of the Microsoft audit and also to obtain assistance with
> development of facts and legal theories"). Indeed, government
> counsel even raised an objection, consistent with the above, based
> on attorney client privilege regarding IRS discussions with QE,
> and that objection was sustained. (Tr. at 119–20.) Despite
> Plaintiff's cherry picking, the IRS thus properly asserts attorney
> client privilege with respect to records exchanged with QE. *See
> United States v. Chen*, 99 F.3d 1495 (9th Cir. 1996) (rebuttable
> presumption that a lawyer is hired to give legal advice) *cert.
> denied*, 520 U.S. 1167 (1998).

Dkt. #78 at 13–14 (emphasis in original).

While facts alone are not protected by this privilege, communications between an

attorney and a client are, even if those communications contain facts, if the purpose of the

communication is to enable the attorney to provide legal advice.  The documents Microsoft

objects to for being just facts are apparently workpapers provided to IRS Chief Counsel

attorneys as part of a request for advice on a particular issue, while others are workpapers

containing handwritten notes or analysis that were sent to an attorney to solicit or inform legal

advice.  Microsoft's problem with attorney client documents related to the temporary

regulations fail to point to specific documents or deal with the evidence submitted by the IRS in

declarations related to the use of attorneys to craft those regulations.  Microsoft's first and third points are insufficiently argued and will not serve as a basis for denying summary judgment.

Microsoft's second argument certainly gives the Court pause.  At times the IRS has portrayed its use of QE and Boies contractors differently.  However, the Court is convinced that a careful, close reading of the record demonstrates that these attorney contractors were hired in part for legal analysis and that a rebuttable presumption applies here.  This was not a routine examination where contractors could be assumed to be doing routine auditing work rather than providing legal advice.  Microsoft has not successfully rebutted that presumption.

**Work product privilege**

Work product protection under exemption 5 protects materials prepared by an attorney or others in anticipation of litigation.  The IRS initially claimed work product privilege for 635 documents.  Microsoft points out that, although this audit process has been lengthy, it was not clear when these documents were created that there would be litigation, and that the IRS has said as much previously.  Dkt. #68 at 22–24.  In its Reply brief, the IRS concedes that point and withdraws its work-product claims for any materials pertaining solely to Microsoft's audit.  Dkt. #78 at 16.  The IRS has amended its *Vaughn* index (Dkt. #78-2) and submitted a supplemental declaration (Dkt. #78-1) to support the continued withholding of documents that relate to: "(1) tax cases involving taxpayers other than Plaintiff which were anticipated or currently being litigated; or (2) the enforcement/anticipated litigation of a summons enforcement matter involving Plaintiff."  *Id*.  The record demonstrates that these remaining documents were prepared by attorneys or by an IRS employee at the supervision of an attorney.  The Court is satisfied that this issue has been resolved and does not serve as a basis for precluding summary judgment.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 23

### v.    Exemption 6

Personnel, medical, and similar files where the disclosure of such information would constitute a "clearly unwarranted invasion of personal privacy" are exempt from disclosure.  5 U.S.C.  §  552(b)(6).  In  determining  whether  exemption  6  applies,  the  court  considers  two factors: (1) whether the information is in a personnel, medical, or "similar" agency file; and (2) whether  a  countervailing  public  interest  in  the  record  outweighs  in  the  individual's  privacy interest. *Multi Ag Media LLC v. U.S.D.A.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008).  The Supreme Court has broadly interpreted "similar files" as any information that "applies to a particular person."  *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).  Courts have found  that  individuals  have  a  sufficient  interest  in  the  privacy  of  their  names,  addresses, finances, and so on, to justify withholding under exemption 6.  *See Multi Ag Media*, 515 F.3d at 1230.  Meanwhile, the public's interest is limited to the statutory purpose of FOIA — to "shed light on an agency's performance of its statutory duties."  *See DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).

The IRS claims exemption 6 protection for 252 documents at issue.  The parties agree that the information withheld under this exemption includes personal phone numbers, personal email addresses, home addresses, credit card information, and details of personal matters pertaining to agency employees such as travel plans.  Microsoft argues, without further analysis and in a single sentence, that "employee vacation time, phone numbers, mealtime plans, last name, address, and leave plans," are not intimate personal details.  Dkt. #68 at 32.  The Court disagrees and finds that exemption 6 was properly applied by the IRS.

### vi.    Exemption 7A

FOIA exemption 7 exempts from disclosure "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The threshold determination under exemption 7 is whether the documents at issue were (a) compiled by a law enforcement agency; and (b) compiled for a law enforcement purpose(s). *Abramson v. FBI*, 456 U.S. 615, 622 (1982). The IRS is a law enforcement agency for purposes of exemption 7. *Church of Scientology v. IRS*, 995 F.2d 916, 919 (9th Cir. 1993); *Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987). Courts have consistently held that records compiled for civil or criminal investigations by the IRS are "records or information compiled for law enforcement purposes." *Tax Analysts*, 294 F.3d at 77.

FOIA exemption 7(A) applies to information whose disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). It is properly invoked when release of a document would hinder an agency's ability to control or shape an investigation. *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996).

The IRS claims exemption 7(A) protection for 2,365 records. Given the nature of the audit against Microsoft and the obvious intent of Microsoft to inquire about that audit via these FOIA requests, it would appear that some use of this exemption is to be expected. The IRS cites several cases to support this exemption under these circumstances:

> Under exemption 7(A), the Service must show that records could reasonably be expected to interfere with enforcement proceedings by showing that (1) law enforcement proceeding is pending or prospective, and (2) release of information about it could reasonably be expected to cause articulable harm. *See, e.g., NLRB v. Robins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) (holding that government must show how records "would interfere with a pending enforcement proceeding"); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1113–14 (D.C. Cir. 2007) (discussing dual elements necessary to invoke exemption 7(A): reasonably anticipated law enforcement proceeding and harm if information released).

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 25

A court may make generic determinations that disclosure of certain types of investigatory records would generally interfere with certain kinds of enforcement proceedings. *Robbins Tire & Rubber*, 437 U.S. at 223–24; *see also Spannaus v. DOJ*, 813 F.2d 1285, 1288 (4th Cir. 1987). Records may be withheld categorically or individually from disclosure under FOIA exemption 7(A). *DOJ v. Reporters' Comm. for Freedom of the Press*, 489 U.S. 749 (1989) (where the Court found that records could be categorically withheld under FOIA exemption 7(C), it relied in part on cases in which records were categorically withheld under 7(A)).

In determining whether disclosure of a category of records would "interfere" with enforcement proceedings, Courts have also interpreted "interference" broadly. For example, in Robbins Tire, the Supreme Court found that permitting a plaintiff earlier and greater access to documents or other information collected by the agency than it would normally be entitled, constitutes the type of interference exemption 7(A) was enacted to prevent. *Robbins Tire & Rubber*, 437 U.S. at 236. Other courts have found that interference with enforcement proceedings occurs by revealing the identities of potential witnesses, the nature, scope, direction, and limits of the investigation, the transactions being investigated, information on third-party contacts, the evidence obtained to date, the reliance the agency places on the evidence, and the Government's strategies and theories. *Curran v. DOJ*, 813 F.2d 473, 474 (1st Cir. 1987); *Barney v. IRS*, 618 F.2d 1268, 1273 (8th Cir. 1980). In upholding this exemption, the cases add that FOIA was not intended to be used as a discovery tool. *See United States v. Murdock*, 548 F.2d 599, 602 (5th Cir. 1977).

Dkt. #63 at 30–31. This case law supports the IRS's use of boilerplate language applying this exemption to categories of documents. Microsoft fails to argue, in a nonconclusory way, how the so-called boilerplate language fails to satisfy the above standards. The Court gives credence to the IRS that the material withheld here includes "information on the agency's focus or interest in specific facts, transactions, individuals, evidence, or claims which would prematurely disclose the nature, scope, direction, and strategy of the audit" and that this would naturally harm the IRS's enforcement activities. *See id.* at 31 (citing Valvardi Decl. at ¶ 56). The use of this exemption does not preclude summary judgment.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 26

1

2   **C. Microsoft's Surreply**

3        Microsoft has filed a Surreply arguing that the IRS improperly added new arguments

4   and facts on Reply, and that newly attached declarations are made by a declarant without

5   personal knowledge.  Dkt. #80.  The Court finds that any new arguments or facts are responsive

6   to Microsoft's brief and that Microsoft has no legitimate claim of prejudice.   The Court

7   declines to strike anything in the declarations for lack of personal knowledge given the nature

8   of the declarant's work on this complex case and the Court's own ability to parse the weight of

9   any evidence in resolving this Motion.

10                              **IV.    CONCLUSION**

11

12        Having reviewed the relevant briefing and the remainder of the record, the Court hereby

13   finds and ORDERS that the IRS's Motion for Summary Judgment. Dkt. #63, is GRANTED.

14   Plaintiff's remaining claims are DISMISSED.  This case is CLOSED.

15        DATED this 18th day of January, 2023.

16

17

18

19                              RICARDO S. MARTINEZ
                               UNITED STATES DISTRICT JUDGE
20

21

22

23

24

25

26

27

28